# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:21-cv-00115-MR

| | |
|---|---|
| JAMES LARKIN KETCHERSID, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BRET D. MURPHY, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendant Bret D. Murphy's[1] Motion for Summary Judgment [Doc. 45].

## I. BACKGROUND

The incarcerated Plaintiff James Larkin Ketchersid, Jr. ("Ketchersid" or simply, "the Plaintiff"), proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Marion Correctional Institution. [Doc. 1: Complaint]. The Plaintiff's unverified Amended Complaint[2] [Doc. 13: Am. Complaint; Doc. 13-1: Am. Compl.

---

[1] "Brett Murphy" in the Complaint. The Clerk will be instructed to correct the Defendant's name in the Court's record.

[2] The original Complaint [Doc. 1] is also unverified. The Supplemental Complaint [Doc. 14], is verified but it was stricken and, in any event, it does not address Defendant Murphy's alleged deliberate indifference.

Attachment] passed initial review against Defendant Bret D. Murphy for deliberate indifference to serious medical/mental health needs. [See Doc. 25: Order on Initial Review]. The Plaintiff seeks compensatory, punitive, and nominal damages, and injunctive relief. [Doc. 13: Am. Complaint at 5; Doc. 13-1: Am. Complaint Attachment at 8].

Defendant Murphy filed the instant Motion for Summary Judgment. [Doc. 45: MSJ; see Doc. 46: MSJ Memo.]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 50: Roseboro Order]. The Plaintiff has not responded, and the time to do so has expired.[3] This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

---

[3] The Roseboro Order was entered one day before the Plaintiff's Notice of Change of Address was docketed. [See Docs. 50, 51]. On March 1, 2023, the Clerk mailed a copy of the Roseboro Order to the Plaintiff's updated address in an abundance of caution. More than 30 days have elapsed since the Roseboro Order was re-mailed, and the Plaintiff has not responded.

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The following is a recitation of the undisputed facts.

Defendant Murphy was the psychological services coordinator at Marion CI until May 1, 2021. [Doc. 47-6: Murphy Decl. at ¶¶ 2-4]. Murphy was part of the Plaintiff's treatment team, along with three other psychologists and psychiatrists, who made decisions as a team regarding the Plaintiff's mental health treatment. [Doc. 47-6: Murphy Decl. at ¶¶ 4, 9]. Marion CI provides Level 3 Mental Health Services – outpatient psychiatric services – to offenders. [Doc. 47-6: Murphy Decl. at ¶¶ 7, 8; Doc. 47-5 at 3]. As part of the Plaintiff's treatment, he was prescribed medication. [Doc. 47-6: Murphy Decl. at ¶ 15]. However, he continuously failed to take it. [Id.]. When the Plaintiff would complain about his medication not working, Defendant Murphy told the Plaintiff that he needed to take his medication for four to six weeks before they could tell if the medication was working. [Id. at ¶ 16]. However, the Plaintiff continued not to take his medication as prescribed. [Id. at ¶ 17]. The Plaintiff also refused to stop smoking marijuana although he had been told that marijuana could conflict with his medication. [Id. at ¶ 18].

On February 20, 2021, the Plaintiff was charged with a disciplinary infraction for substance possession and he was placed in restrictive housing

(RH). [Doc. 47-2: MSJ Ex at 1 (Offender Infractions); Doc. 48: Med. Records at 1]. Defendant Murphy visited the Plaintiff on February 25, 2021. [Doc. 48: Med. Records at 1]. At that meeting, the Plaintiff "denie[d] current SIB, suicidal or homicidal ideation, intent or plan." [Id.]. Defendant Murphy noted that the Plaintiff had made "[l]ittle progress due to drug relapse," and he scheduled the Plaintiff for a follow-up appointment. [Id.].

On March 7, 2021 at 0007 hours, the Plaintiff reported thoughts of harming himself to a correctional lieutenant.[4] [Doc. 47-2: MSJ Ex at 2 (Incident Report)]. The Plaintiff was placed on self-injury precautions (SIP) and he was seen by a staff psychologist. [Id.; Doc. 48: Med. Records at 3].

Defendant Murphy saw the Plaintiff on March 8, 2021. [Doc. 48: Med. Records at 6]. The Plaintiff told Murphy that he was upset because he was being referred to ICON[5] after having been found guilty of the disciplinary infraction. [Id.]. The Plaintiff's SIP precautions were continued. [Id.]. Defendant Murphy saw the Plaintiff again on March 9, 2021, and the Plaintiff reported ongoing suicidal thoughts. [Id. at 8]. The Plaintiff's SIP

---

[4] The correctional lieutenant is not a defendant in this case.

[5] "Intensive control" is the long-term removal of close custody felon or minimum custody level I misdemeanant inmates from the general inmate population to confinement in a secure area." NCDPS Policy & Procedures C.1301(a).

6

was extended and the Plaintiff's treatment team, including Defendant Murphy, continued to meet with him daily. [Id. at 8, 10, 12, 14, 16, 21]. The Plaintiff was also continuously observed and monitored by correctional staff pursuant to applicable policy and procedures. [Doc. 47-6: Murphy Decl. at ¶ 22].

On March 14, 2021, the Plaintiff was taken off of SIP and was placed on observation after the Plaintiff reported that his self-injury ideation had stopped. [Doc. 48: Med. Records at 23]. He continued to be observed and monitored by psychological staff. [Id. at 25, 27, 33, 34, 36, 38]. The Plaintiff refused to attend sessions with Defendant Murphy on March 30, 2021 and April 8, 2021. [Id. at 35, 41].

During his stay on RH, the Plaintiff asked to be transferred to another camp for TDU[6] and to see a psychiatrist. [See id. at 18, 29, 31, 42, 43, 44, 45]. On April 13, 2021, Defendant Murphy referred the Plaintiff to the

---

[6] A Therapeutic Diversion Unit is a "designated and secured housing unit staffed by behavioral health, nursing, and custody and additional ancillary staff…." Health and Wellness Services Policies and Procedures, TX1-15(III)(b). Its purpose of TDU is to "decrease the population of offenders with mental illness in Restrictive Housing and time spent in Restrictive Housing by such offenders; decreasing rates of release of offenders with mental illness to the community from Restrictive Housing; decreasing offender violent, self-injurious/suicidal, or otherwise disruptive behavior; providing evidence-based and multidisciplinary behavioral health-oriented therapeutic programming to offenders; and preparing offenders for successful transitions from more to less restrictive environments within NCDPS prisons or to the community at large." Id. at I.

psychiatrist for a possible medication reevaluation. [Id. at 42]. The Plaintiff was provided Level 3 Mental Health Services while he was at Marion CI. [Doc. 47-6: Murphy Decl. at ¶ 12]. Therefore, there was no need for the Plaintiff to be transferred to another facility. [Id. at ¶ 13].

On April 28, 2021, Dr. Hewitt told the Plaintiff that his ICON had been disapproved and that his time in RH was over. [Doc. 48: Med. Records at 48]. On May 3, 2021, Hewitt removed the Plaintiff from behavior observation and noted:

> Inmate has been trying to use his mental health status M3/SIP/Bx Obs to get out of ICON. Inmate was informed last week that his ICON was disapproved and now inmate is trying to use his mental health status to get out of RH and back on 'the yard.'

[Id. at 49].

## IV. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical or mental health treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id.; see Buffington v. Baltimore Cnty., Md.,

8

Case 1:21-cv-00115-MR    Document 53    Filed 08/29/23    Page 8 of 12

913 F.2d 113, 120 (4th Cir. 1990) ("A serious psychological impairment can qualify as [a serious] medical need."). "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). An official acts with deliberate indifference if he had actual knowledge of the prisoners serious medical needs and the related risks but nevertheless

9

disregards them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The Plaintiff alleges that Defendant Murphy inflicted severe mental distress on him by delaying treatment for his Mental Health Level 3 conditions of panic disorder, PTSD, anxiety, and depression between March 1, 2021 and May 11, 2021,[7] which resulted in mental pain and suffering. [Doc. 13: Am. Complaint at 5; Doc. 13-1: Am. Complaint Attachment at 1-8].

The undisputed forecast of evidence presented by Defendant Murphy, however, establishes that the Plaintiff received Mental Health Level 3 services at Marion CI, and that there was no need for the Plaintiff to be transferred to another facility. The Plaintiff received nearly daily care for his mental health including several appointments with psychiatrists. While the Plaintiff failed to improve, that failure was due, at least in part, to his refusal to take his mental health medication consistently and his refusal to stop taking controlled substance. Also, the Plaintiff's complaints were partially motivated by his desire to avoid ICON. The Plaintiff has not forecast any

---

[7] According to the Plaintiff, he was shipped to Maury CI on May 11, 2021. [Doc. 13-1 at 8]. However, Defendant Murphy was only employed by NCDPS through May 1, 2021. [Doc. 47-6: Murphy Decl. at ¶ 2].

evidence whatsoever that the mental health care he received was inadequate, or that Defendant Murphy was deliberately indifferent to his serious medical or psychological needs. The Plaintiff's disagreement with the care that Defendant Murphy and the rest of his treatment team provided is insufficient to survive summary judgment. See Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990) (mere negligence or malpractice does not violate the Eighth Amendment); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) ("mere 'disagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances.").

The Plaintiff has not raised a genuine issue for trial and the Defendant's Motion for Summary Judgment is granted.[8]

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment and this action will be dismissed with prejudice.

---

[8] Because the Plaintiff has not presented a forecast of evidence that Defendant Murphy violated a constitutional right, Defendant Murphy is entitled to qualified immunity on Plaintiff's § 1983 claim against him. As such, the Court grants summary judgment on this ground as well.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 45] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to replace "Brett Murphy" with Bret D. Murphy in the Court's record, and to terminate this action.

**IT IS SO ORDERED.**

Martin Reidinger
Chief United States District Judge

12

Case 1:21-cv-00115-MR   Document 53   Filed 08/29/23   Page 12 of 12